IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED FIRE AND CASUALTY COMPANY,
a/s/o Robert and Theresa Corral,

        Plaintiff,

v.

Case No. 5:10cv199-RS-EMT

WHIRLPOOL CORPORATION,
a Delaware corporation,

        Defendant.

## NOTICE OF REMOVAL

Defendant Whirlpool Corporation ("Removing Defendant"), by counsel, pursuant

to 28 U.S.C. §§ 1441 and 1446(b), hereby serves notice of its removal of this action,

United Fire and Casualty Company a/s/o Robert and Theresa Corral v. Whirlpool

Corporation, Case No. 2010-524 CA, from the Jackson County Circuit Court, State of

Florida to the United States District Court for the Northern District of Florida and states

as follows:

    1.    United Fire and Casualty Company a/s/o Robert and Theresa Corral

("Plaintiff") filed a Complaint ("Complaint") in the Circuit Court for Jackson County on

June 17, 2010. (See Summons and Complaint, a copy of which is attached as Exhibit

"A"). Removing Defendant was served on June 29, 2010. (See Id.).

                                   CLERK
                         U.S. DISTRICT CT.
                  NORTHERN DIST. FLA.
                  PENSACOLA, FLA.

            10 JUL 22  PM 3: 14

                     Jmd
                    FILED

FLN3-4312
$350⁰⁰

2. In its Complaint, Plaintiff asserts claims against Removing Defendant for alleged property damage.

## JURISDICTIONAL BASIS FOR REMOVAL

3. This Court has federal diversity jurisdiction over this action under 28 U.S.C. §§ 1332 and 1446(b) because (1) there is complete diversity of citizenship between the named plaintiff and the named defendant, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Plaintiff filed suit in Florida and alleges that it is a "foreign for profit corporation doing business in all counties including Jackson County, Florida." (See Ex. A, Complaint ¶ 2). Plaintiff is a corporation existing under the laws of the State of Iowa, having its principal place of business in the state of Iowa. Plaintiff's subrogors, Robert and Theresa Corral, are citizens of Jackson County, Florida. (See Id. at ¶9).

5. Removing Defendant Whirlpool Corporation is, and at the time of filing of this action was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of Michigan. (See Ex. A, Complaint ¶3).

6. Thus, this case involves "citizens of different States" because Plaintiff is an Iowa citizen, Plaintiff's subrogors are citizens of Florida, and Whirlpool Corporation is not a citizen of Florida (or Iowa). See 28 U.S.C. §1332(a)(1).

7. The action is removable because "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." See 28 U.S.C. § 1441(b).

2

8.      On December 28, 2008, Plaintiff's counsel sent Removing Defendant correspondence indicating Plaintiff's alleged damages exceed $75,000. Specifically, Plaintiff is seeking $356,635.00. (See Exhibit "B", December 28, 2008 correspondence). The amount in controversy in this matter exceeds $75,000 exclusive of interest and costs, as required by 28 U.S.C. § 1332(a).

## TIMELINESS OF REMOVAL

9.      Removing Defendant Whirlpool Corporation was served with a copy of the Complaint on June 29, 2010. The deadline for removing this case is July 29, 2010.

10.     Because this Notice of Removal is being filed within 30 days of service of the Complaint on Removing Defendant and within one year of commencement of this lawsuit, the Notice of Removal is timely under 28 U.S.C. § 1446(b).

## PROCEDURAL REQUIREMENTS FOR REMOVAL

11.     Plaintiff filed this case in Jackson County Circuit Court, and the United States District Court for the Northern District of Florida embraces Jackson County. Thus, this Court is a proper venue for this action. 28 U.S.C. § 112(c).

12.     A copy "of all process, pleadings, and orders" filed in this action is attached to this Notice of Removal as Exhibit "C" as required by 28 U.S.C. § 1446(a).

13.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed promptly with the state court and served upon opposing counsel.

WHEREFORE, Removing Defendant Whirlpool Corporation respectfully notifies the Court, the state court, and the Plaintiff of the removal of this action from the Circuit

Court for Jackson County to the United States District Court for the Northern District of

Florida, Panama City Division.

Respectfully submitted,

7/22/10

Of Counsel:
David R. Pruitt
Barnes & Thornburg LLP
600 1st Source Bank Center
100 North Michigan
South Bend, Indiana 46601
Telephone: (574) 233-1171
Facsimile: (574) 237-1125

Bill McEachern, Jr., Esquire
Florida Bar Number: 362824
Moulton McEachern & Walker, P.A.
Bank of America Building
5041 Bayou Boulevard, Suite 300
Pensacola, Florida 32503-2558
Telephone: (850) 969-3151
Facsimile: (850) 969-0566

Attorneys for Defendant Whirlpool Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of July, 2010, a copy of the foregoing

Notice of Removal was mailed first-class, postage prepaid, to:

Matthew W. Peaire
Amanda O. Singleton
Butler Pappas Weihmuller Katz Craig LLP
One Harbour Place
777 South Harbour Island Blvd., Suite 500
Tampa, Florida 33602-5729

Bill McEachern, Jr.

SBDS01 CBRISCO 332097v1

4

F:\WHIRLPOOL\pleadings\Notice of Removal.doc

## IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
## IN AND FOR JACKSON COUNTY, FLORIDA
## CIVIL DIVISION

UNITED FIRE AND CASUALTY COMPANY,
a/s/o Robert and Theresa Corral,

Case No.: 2010 - 524 CA

Plaintiff,

v.

WHIRPOOL CORPORATION,
a Delaware corporation,

CERTIFIED PROCESS SERVER # 052
SECOND JUDICIAL CIRCUIT COURT OF FLORIDA
DATE SERVED 6-29-10 TIME 11:40 AM

Defendant.

_____

**SUMMONS**

THE STATE OF FLORIDA:

TO ALL AND SINGULAR THE SHERIFFS OF SAID STATE:

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint,

in the above-styled cause upon the Defendant:

**WHIRLPOOL CORPORATION**
**% Corporation Service Company - Registered Agent**
1201 Hays Street
Tallahassee, FL 32301

The Defendant is hereby required to serve written defenses to said Complaint, on Plaintiff's

attorney, whose name and address is:

Matthew W. Peaire, Esquire
Amanda O. Singleton, Esquire
BUTLER PAPPAS WEIHMULLER KATZ CRAIG, LLP
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, FL 33602
PH: (813) 281-1900

within 20 days after service of this Summons upon that Defendant, exclusive of the day of service,

and to file the original of said written defenses with the Clerk of said Court either before service on



EXHIBIT
A

Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered

against that Defendant for the relief demanded in the Complaint.

WITNESS my hand and the seal of the Court on _____June 17_____,

2010.

Clerk of Circuit Court

By: _____
Deputy Clerk

In accordance with the American With Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact the individual or agency sending the notice at One Harbour Place, Suite 500, 777 S. Harbour Island Blvd., Tampa, Florida 33602 (813) 281-1900 not later than seven days prior to the proceeding. If hearing impaired, (TTD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

MATTHEW W. PEAIRE, ESQ.
Florida Bar No.: 0484717
AMANDA O. SINGLETON, ESQ.
Florida Bar No.: 0015957
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, Florida 33602
(813) 281-1900
Attorneys for Plaintiff

## IMPORTANTE

Usted ha side demandado legalmente. Tiene viente (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el number del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresor y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparense en la guia telefonica.

Si desea responder la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberia usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney".

MATTHEW W. PEAIRE, ESQ.
Florida Bar No.: 0484717
AMANDA O. SINGLETON, ESQ.
Florida Bar No.: 0015957
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, Florida 33602
(813) 281-1900
Attorneys for Plaintiff

**IMPORTANT**

Des poursuites judiciaries onte ete enterprises contre vous, Vous avez 20 jours consecutifs a partir de la date de l'assignation de cete citation pour deposer une response ecrite a la plainte ci-joint aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et due nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de pedre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouves requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocoie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

MATTHEW W. PEAIRE, ESQ.
Florida Bar No.: 0484717
AMANDA O. SINGLETON, ESQ.
Florida Bar No.: 0015957
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, Florida 33602
(813) 281-1900
Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR JACKSON COUNTY, FLORIDA
CIVIL DIVISION

UNITED FIRE AND CASUALTY COMPANY,
a/s/o Robert and Theresa Corral,

                                    Case No.:

     Plaintiff,

v.

WHIRPOOL CORPORATION,
a Delaware corporation,

     Defendant.

_____

## COMPLAINT

     Plaintiff, UNITED FIRE AND CASUALTY COMPANY (hereinafter "United Fire") a/s/o

Robert and Theresa Corral (hereinafter the "Corrals"), by and through its undersigned counsel, and

pursuant to the Florida Rules of Civil Procedure, hereby files this, its Complaint, upon Defendant,

WHIRLPOOL CORPORATION (hereinafter "Whirlpool"), and avers as follows:

### GENERAL AVERMENTS

     1.     This is an action for damages in excess of Fifteen Thousand Dollars and No Cents

($15,000.00) exclusive of interest and costs.

     2.     At all times material, UNITED FIRE was a foreign for profit corporation doing

business in all counties in Florida including Jackson County, Florida.

     3.     WHIRLPOOL was registered as a Delaware Corporation and engaged in business in

the State of Florida.

     4.     At all times material to this action, UNITED FIRE insured the Corrals pursuant to

a policy of insurance numbered 80850170, a true and correct copy of which is attached as Exhibit

"A." As a result of the events described in this Complaint, Plaintiff, UNITED FIRE, became

obligated to pay, and did pay insurance proceeds to the Corrals.

5.     As a result of the payment of insurance proceeds to its insureds, Plaintiff, UNITED FIRE, is now subrogated to the rights of the Corrals to the extent of its payment of insurance proceeds.

6.     At all times material, the Corrals were the owners of a Whirlpool Dryer, model number GEW9250PW1, serial number MT1360893.

7.     At all times material, WHIRLPOOL, was the manufacturer of the subject dryer.

8.     At all times material to this action, WHIRLPOOL was engaged in the business of manufacturing and selling dryers such as the one that is the subject of this Complaint.

9.     At all times material hereto, the subject dryer was located inside the Corral residence located at 2870 Hwy 90 Levy Street, Cottondale, Florida, Jackson County, Florida.

10.     On or around June 30, 2008, a fire occurred at the Corral residence. The fire originated in the subject dryer.

11.     The fire loss was a direct and proximate result of a manufacturing defect of the subject dryer.

12.     As a direct result of the fire, the Corral residence sustained extensive damages.

13.     The damages were directly and solely caused by the subject dryer.

14.     All conditions precedent to the bringing of this action have occurred, have been met, or have been waived.

## COUNT I - STRICT PRODUCT LIABILITY
## WHIRLPOOL CORPORATION

15.     Plaintiff incorporates and re-alleges paragraphs one (1) through thirteen (13) as though fully set forth herein.

16.     It is foreseeable, and likewise would have been foreseeable at the time of the manufacture and sale of the subject dryer, that said dryer would reach end consumers such as the Corrals and that same would be used by the end consumers.

17.     The subject dryer was defective for reasons including but not limited to the positioning of the power wiring to the heater which allowed the cable to touch the duct without being properly secured to the bottom of the heater, thus igniting a fire.

18.     The defect in the subject dryer existed at the time it was sold to the Corrals.

19.     On or around June 30, 2008 the subject dryer malfunctioned and caught fire, causing extensive damages to the Corral residence.

20.     The Corrals were normal, anticipated and intended users of the subject dryer, and acquired it through the normal and ordinary stream of commerce.

21.     The subject dryer was in the same defective condition at the time of the loss as it had been at the time it was sold to the Corrals.

22.     WHIRLPOOL had a duty not to sell, place into the stream of commerce, install and/or service a defective product that could cause damage to a consumer such as the Corrals.

23.     The defect in the subject dryer, which was present at the time it was sold to the Corrals, made the product unreasonably dangerous in its normal operational use, because it would, and did, cause extensive damage to the Corral residence.

24.     WHIRLPOOL breached its duty to the Corrals by manufacturing and selling the subject dryer in a defective condition. It was foreseeable that the Corrals could suffer damages as a direct result of the unreasonably dangerous condition of the subject dryer.

25.     As a direct and proximate result of the defective condition of the dryer, as described herein, the Corrals sustained extensive damages.

26.     UNITED FIRE was consequently required to compensate the Corrals for their loss by virtue of the insurance policy attached as Exhibit "A."

27.     As a result of said insurance payments, UNITED FIRE is now subrogated to the legal rights of the Corrals.

WHEREFORE, Plaintiff, UNITED FIRE AND CASUALTY COMPANY, by and through its undersigned counsel, respectfully demands judgment against WHIRLPOOL CORPORATION, in excess of Fifteen Thousand Dollars and 00/100ths Cents ($15,000.00), plus pre-judgment interest, post-judgment interest, costs and any other relief this Court deems proper.

Respectfully Submitted,

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

Matthew W. Peaire
Florida Bar No.: 0484717
Amanda O. Singleton
Florida Bar No.: 0015957
One Harbour Place
777 South Harbour Island Blvd., Suite 500
Tampa, FL 33602-5729
813/281-1900; Fax: 813/281-1900
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by Service

of Process to said Defendant or its Agent.

AMANDA O. SINGLETON, ESQUIRE

UNITED FIRE & CASUALTY COMPANY    0110   COMPANY COPY
118 SECOND AVE SE
PO BOX 73909
CEDAR RAPIDS IA 52407-3909

| ACCOUNT NUMBER: | 235200 |
|---|---|
| POLICY NUMBER: | 80850170 |

**HOMEOWNERS DECLARATIONS**

POLICY WILL BE BILLED TO THE MORTGAGEE

| ISSUE DATE | 04/25/2007 | REPLACEMENT OF | 80850170 | CHANGE | | 04/26/2007 |
|---|---|---|---|---|---|---|

NAMED INSURED: ROBERT CORRAL THERESA CORRAL

AND

MAILING ADDRESS: PO BOX 677
COTTONDALE FL 32431-0677

AGENCY & CODE 752642

BUTLER-VAUSE INC
PO BOX 1348
TALLAHASSEE FL 32302-1348

FROM: 04/26/2007   TO: 04/26/2008

POLICY PERIOD: 12:01 A.M. Standard time At The Residence Premises

And for successive policy periods as stated below.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period, subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will terminate after any statutorily required notices are mailed to you. An insufficient funds check is not considered payment.

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| | DESCRIBED LOCATION:<br>2870 HWY 90<br>COTTONDALE FL 32431<br><br>PRIMARY, 1 FAMILY, 1-STORY,<br>YEAR OF CONSTRUCTION 1998, FRAME,<br>PROTECTION CLASS 7, TERRITORY 052, WITHIN CITY LIMITS<br>BCEG 05<br><br>MORTGAGEE: COUNTRYWIDE HOME LOANS<br>          ISAOA ATIMA FTWX-22<br>          PO BOX 961206<br>          FORT WORTH TX 76161-1206<br>          LOAN #: 140771392 | | |
| A | DWELLING | 214,100 | 1,167 |
| B | OTHER STRUCTURES | 21,410 | INCL |
| C | PERSONAL PROPERTY | 107,050 | INCL |
| D | LOSS OF USE | 42,820 | INCL |
| E | PERSONAL LIABILITY - EACH OCCURRENCE | 100,000 | INCL |
| F | MEDICAL PAYMENTS - EACH PERSON | 1,000 | INCL |
| | FORMS<br><br>H00003    0491 SPECIAL FORM<br>H00109    0606 SPECIAL PROVISIONS - FLORIDA | | |

DEDUCTIBLE - SECTION I $ 1000
Except $4282 for Hurricane

In case of a loss under Section I, we cover only that part of the loss over the deductible stated.

This Declarations Page supersedes and replaces any preceding declarations page bearing the same policy number for this policy period.     X

_____
(COUNTERSIGNED BY AUTHORIZED REPRESENTATIVE)

HO 70 01 10 96



EXHIBIT
A

| ACCOUNT NUMBER: | 235200 |
|---|---|
| POLICY NUMBER: | 80850170 |

### SUPPLEMENTAL HOMEOWNERS DECLARATIONS

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| HO0334 | 0903 LIMITED FUNGI, WET OR DRY ROT | | |
| HO0351. | 0106 HURRICANE PERCENTAGE DED-FLORIDA | | |
| | HURRICANE DEDUCTIBLE: 2% | | |
| HO0401 | 0693 AMENDATORY ENDORSEMENT | | |
| HO0416 | 0491 PREMISES ALARM OR FIRE PROTECTION | | -59 |
| | CENTRAL STATION FIRE ALARM | | |
| | LOCAL SMOKE ALARM | | |
| HO0490 | 0606 PERSONAL PROPERTY REPLACEMENT COST | | 222 |
| HO0496 | 0491 HOME DAY CARE BUSINESS-NO LIABILITY | | |
| | COVERAGE/LIMITED PROPERTY COVERAGE | | |
| HO2394 | 0606 SINKHOLE LOSS COVERAGE | | |
| HO7003 | 0491 AUTOMATIC VALUATION ADJUSTMENT | | |
| HO7055 | 0700 GOLF CART LIABILITY COVERAGE | | |
| | FAIA | | 2.00 |
| | HURRICANE REINSURANCE ASSESSMENT | | |
| | FL PHCF CAT ASSMT - 1.0% | | 13.00 |
| | TOTAL PREMIUM | | 1,345.00 |
| | YOUR POLICY INCLUDES THE FOLLOWING CHARGE | | |
| | FOR HURRICANE COVERAGE | | 259.00 |
| | TOTAL PREMIUM | | 1,345.00 |
| | ADJUSTMENT FOR THIS CHANGE: | | |
| | NO CHANGE | | |

HO 70 47 10 96

**Stuffer Attachment Record**

For Company Use Only

The following Stuffers are attached:

| | |
|---|---|
| PL1108 | 200705 |
| PL225 | 199505 |
| PL226 | 199505 |
| ST1319 | 199907 |
| ST1329 | 199910 |
| ST1393 | 200107 |
| ST1575 | 200505 |
| ST1578 | 200510 |
| ST1616 | 200703 |
| ST1623 | 200707 |
| ST1627 | 200707 |

| UNITED FIRE & CASUALTY COMPANY | 0110 | COMPANY COPY |
|---|---|---|

UNITED FIRE & CASUALTY COMPANY     0110   COMPANY COPY
118 SECOND AVE SE
PO BOX 73909
CEDAR RAPIDS IA 52407-3909

ACCOUNT NUMBER: 235200
POLICY NUMBER: 80850170

**HOMEOWNERS DECLARATIONS**

POLICY WILL BE BILLED TO THE MORTGAGEE

| ISSUE DATE | 03/20/2008 | REPLACEMENT OF | 80850170 | RENEWAL |
|---|---|---|---|---|

NAMED INSURED: ROBERT CORRAL
THERESA CORRAL
AND
MAILING ADDRESS: PO BOX 677
COTTONDALE FL 32431-0677

AGENCY & CODE: 752642

BUTLER-VAUSE INC
PO BOX 1348
TALLAHASSEE FL 32302-1348

POLICY PERIOD: 12:01 A.M. Standard time At The Residence Premises
FROM: 04/26/2008 TO: 04/26/2009

And for successive policy periods as stated below.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period, subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this Policy will terminate after any statutorily required notices are mailed to you. An insufficient funds check is not considered payment.

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| | DESCRIBED LOCATION:<br>2870 HWY 90<br>COTTONDALE FL 32431<br><br>PRIMARY, 1 FAMILY, 1-STORY,<br>YEAR OF CONSTRUCTION 1998, FRAME,<br>PROTECTION CLASS 7, TERRITORY 052, WITHIN CITY LIMITS<br>BCEG 05<br><br>MORTGAGEE: COUNTRYWIDE HOME LOANS<br>     ISAOA ATIMA FTWX-22<br>     PO BOX 961206<br>     FORT WORTH TX 76161-1206<br>     LOAN #: 140771392 | | |
| A | DWELLING | 219,000 | 1,250 |
| B | OTHER STRUCTURES | 21,900 | INCL |
| C | PERSONAL PROPERTY | 109,500 | INCL |
| D | LOSS OF USE | 43,800 | INCL |
| E | PERSONAL LIABILITY - EACH OCCURRENCE | 100,000 | INCL |
| F | MEDICAL PAYMENTS - EACH PERSON | 1,000 | INCL |
| | FORMS<br><br>H00003   0491 SPECIAL FORM<br>H00109   0108 FL-SPECIAL PROVISIONS | | |

DEDUCTIBLE - SECTION I $ 1000
Except $4380 for Hurricane

In case of a loss under Section I, we cover only that part of the loss over the deductible stated.

This Declarations Page supersedes and replaces any preceding declarations page bearing the same policy number for this policy period.

X _____
(COUNTERSIGNED BY AUTHORIZED REPRESENTATIVE)

HO 70 01 10 96

| ACCOUNT NUMBER: | 235200 |
|---|---|
| POLICY NUMBER: | 80850170 |

## SUPPLEMENTAL HOMEOWNERS DECLARATIONS

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| H00334 | 0903 LIMITED FUNGI, WET OR DRY ROT | | |
| H00351. | 0106 HURRICANE PERCENTAGE DED-FLORIDA | | |
| | HURRICANE DEDUCTIBLE: 2% | | |
| H00401 | 0693 AMENDATORY ENDORSEMENT | | |
| H00416 | 0491 PREMISES ALARM OR FIRE PROTECTION | | -63 |
| | CENTRAL STATION FIRE ALARM | | |
| | LOCAL SMOKE ALARM | | |
| H00490 | 0606 PERSONAL PROPERTY REPLACEMENT COST | | 237 |
| H00496 | 0491 HOME DAY CARE BUSINESS-NO LIABILITY | | |
| | COVERAGE/LIMITED PROPERTY COVERAGE | | |
| H02394 | 0108 FL-SINKHOLE LOSS COVG | | |
| H07003 | 0491 AUTOMATIC VALUATION ADJUSTMENT | | |
| H07055 | 0700 GOLF CART LIABILITY COVERAGE | | |
| | FAIA | | 2.00 |
| | HURRICANE REINSURANCE ASSESSMENT | | |
| | FL FHCF CAT ASSMT - 1.0% | | 14.00 |
| | FL FIGA POE ASSMT - 1.2% | | 17.00 |
| | FL FIGA EMG ASSMT - 1.2% | | 17.00 |
| | 2005 FL HURR ASSMT - 1.9% | | 27.00 |
| | 2005 FL EMRG ASSMT - 1.4% | | 20.00 |
| | FL FIGA POE REG 2006 - 1.4% | | 20.00 |
| | TOTAL PREMIUM | | 1,541.00 |
| | YOUR POLICY INCLUDES THE FOLLOWING CHARGE | | |
| | FOR HURRICANE COVERAGE | | 270.00 |
| | TOTAL PREMIUM | | 1,541.00 |
| | Your renewal premium has changed by the | | |
| | following approximate amounts: | | |
| | Rate Changes | | 97.00 |
| | Coverage changes (includes automatic | | -3.00 |
| | changes such as inflation guard) | | |

HO 70 47 10 96

ST 15 78 10 05

**Notice to Policyholders**
About your Homeowners Policy

*This notice does not provide you any coverage.*
*Please read your policy to determine complete details of the coverages that you are provided.*

**LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

PL 226 05 95

## ORDINANCE OR LAW - REJECTION OF INCREASED AMOUNT OF COVERAGE

I have read the Disclosure Notice about the above noted coverage and have decided that I DO NOT WANT THE COVERAGE THAT YOU OFFERED TO ME.

I understand that by rejecting this offer, it need not be repeated for three years from the date of my rejection.

I also understand that I can request this coverage at any time this policy, or a renewal policy, is in force and, if I do, coverage will not become effective:

1.   when a storm or hurricane watch or warning is issued for the State of Florida by the National Weather Service;

2.   during a storm or hurricane; and

3.   for 72 hours after the storm or hurricane watch or warning is canceled by the National Weather Service.

Named Insured(s) Sign Below:

Date Signed:

PL 226 05 95          Copyright, Insurance Services Office, Inc., 1994

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION 1 - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

 Copyright, Insurance Services Office, Inc., 1990

HO 04 16 04 91

## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO 04 16 04 91          Copyright, Insurance Services Office, Inc., 1990

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PERSONAL PROPERTY REPLACEMENT COST

## FLORIDA

### SECTION I

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

a. Coverage C – Personal Property;

b. If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

a. Jewelry;

b. Furs and garments trimmed with fur or consisting principally of fur;

c. Cameras, projection machines, films and related articles of equipment;

d. Musical equipment and related articles of equipment;

e. Silverware, silver-plated ware, goldware, goldplated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

### 1. PROPERTY NOT ELIGIBLE

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

a. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

b. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

c. Articles not maintained in good or workable condition.

d. Articles that are outdated or obsolete and are stored or not being used.

### 2. REPLACEMENT COST

The following loss settlement procedure applies to all property insured under this endorsement:

a. We will pay no more than the least of the following amounts:

(1) Replacement cost at the time of loss without deduction for depreciation;

(2) The full cost of repair at the time of loss;

(3) The limit of liability that applies to Coverage C, if applicable;

(4) Any applicable special limits of liability stated in this policy; or

(5) For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

b. We will settle the loss as noted in Paragraph 2.a. above whether or not actual repair or replacement is complete.

c. You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – FLORIDA

**DEFINITIONS**

The following definitions are added:

"Fungi"

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in a good or product intended for consumption.

"Hurricane Occurrence"

A "Hurricane Occurrence":

a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

b. Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

"Catastrophic Ground Cover Collapse"

"Catastrophic ground cover collapse" means geological activity that results in all of the following:

(1) The abrupt collapse of the ground cover;

(2) A depression in the ground cover clearly visible to the naked eye;

(3) Structural damage, other than settling or cracking, of a building or structure insured under this policy, including the foundation; and

(4) The building or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that building or structure.

**SECTION I – PROPERTY COVERAGES**
**COVERAGE C – PERSONAL PROPERTY**
**SPECIAL LIMITS OF LIABILITY**

Items 10. and 11. are deleted and replaced by the following:

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

a. Accessories and antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item 10.

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b. Is away from the "residence premises"; and

c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

a. Accessories and antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item 11.

**PROPERTY NOT COVERED**

Item 3.b. is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

HO 01 09 01 08

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item 3.b.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

**COVERAGE D – LOSS OF USE**

Item 1 is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the residence premises where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**SECTION I – ADDITIONAL COVERAGES**

8. **Collapse** is deleted and replaced by the following:

8. **Collapse**

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building, or part of the building, cannot be occupied for its intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items (2), (3), (4), (5), and (6) unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

c. If Endorsement HO 00 15 is attached to the policy, Section I – Additional Coverages 8. Collapse in that endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

b. (1) Perils Insured Against in Coverages A and B.

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage C – Personal Property.

d. If Endorsement HO 17 31 is attached to the policy, Section I – Additional Coverages 8. Collapse in that Endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

HO 01 09 01 08

b. (1) Perils Insured Against in Coverage A.

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage C – Personal Property.

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Form HO 00 08, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage 8. in Form HO 00 08.)

The following Additional Coverage is added to all Forms except HO 00 08. With respect to Form HO 00 04, the words 'covered building' used below, refer to property covered under Additional Coverage 10. Building Additions And Alterations.

11. **Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A (or for Form HO 00 04, you may use up to 10% of the limit of liability that applies to Building Additions And Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage 10. in Form HO 00 08.)

HO 01 09 01 08

The following Additional Coverage is added:

"Fungi", Wet Or Dry Rot, Or Bacteria

a. We will pay up to $10,000 for:

(1) The total of all loss payable under Section I-Property Coverages caused by "fungi", wet or dry rot, or bacteria;

(2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

(3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

(4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. $10,000 is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

(1) Number of locations insured; or

(2) Number of claims made.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

SECTION I – PERILS INSURED AGAINST

The Section I – Earth Movement Exclusion does not apply to this peril.

In Forms HO 00 02, HO 00 04, and HO 00 06

12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph e. in Forms HO 00 02 and HO 00 06 and d. in Form HO 00 04 is added:

(e) To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 03:

A. Coverage A – Dwelling And Coverage B – Other Structures

Paragraph 2.f. is added:

f. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.e.(3) is deleted and replaced by the following:

d. Smog, rust or other corrosion;

B. Coverage C – Personal Property

12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph d. is added:

(d) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

HO 01 09 01 08

For Coverage C, the following peril is added.

17. "Catastrophic Ground Cover Collapse"

In Form HO 00 03 with HO 00 15:

A. Under Coverages A, B and C:

Paragraph 1. b.(5) is added:

(5) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 1.(4)(c) is deleted and replaced by the following:

d. Smog, rust of other corrosion;

Under Items (1) through (5) any ensuing loss to property described in Coverages A, B and C not excluded or excepted in this policy is covered.

In Form HO 00 06 with HO 17 31:

For Coverage C:

Paragraph 3. k. is added:

k. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 3.d.(3) is deleted and replaced by the following:

d. Smog, rust or other corrosion;

Under Items 3.a., through 3 d., 3.j. an d 3.k. any ensuing loss to property described in Coverage C not excluded or excepted in this policy is covered.

In Form HO 00 06 with HO 17 32:

For Coverage A:

Paragraph 2.f. is added:

f. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.e.(3) is deleted and replaced by the following:

(3) Smog, rust or other corrosion;

In Forms HO 00 02, HO 00 04, and HO 00 06 the following peril is added:

17. "Catastrophic Ground Cover Collapse"

SECTION I – EXCLUSIONS

1. Ordinance or Law is deleted and replaced by the following:

1. Ordinance Or Law, meaning: any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion 1.a. does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion 1.a. in Form HO 00 03.)

HO 01 09 01 08

Paragraph 1.b. is replaced by the following:

b. **Earth Movement**

"Earth movement" means:

(1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

(2) Landslide, mudslide or mudflow;

(3) Subsidence or sinkhole; or

(4) Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion (1.b.) does not apply to loss by:

(i) Theft; or

(ii) "Catastrophic ground cover collapse".

4. **Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion 1.d. in Form HO 00 03.)

8. **Intentional Loss**, is deleted and replaced by the following:

8. Intentional Loss, meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

(This is Exclusion 1.h. in Form HO 00 03.)

The following Exclusion is added.

"Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

**SECTION I – CONDITIONS**

3. **Loss Settlement**

Under Forms HO 00 02 and HO 00 03:

Paragraph b.4. should be deleted and is replaced by the following:

4. We will settle the loss as follows:

We will settle the loss as noted in b.1. and 2. of this provision whether or not actual repair or replacement is complete.

Paragraph b. 5. is deleted.

Under Form HO 00 06, Items 3.b.(1) and b.(2) is deleted and replaced by the following:

3. b. Buildings under Coverage A at the replacement cost of the property, whether or not you repair or replace the property.

5. **Appraisal** is deleted and replaced by the following:

6. **Mediation Or Appraisal**

If you and we fail to agree on the amount of loss, either may:

a. Demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within three business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

b.  Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

(1)  Pay its own appraiser; and

(2)  Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

8.  Suit Against Us is deleted and replaced by the following:

8.  Suit Against Us

No action can be brought unless the policy provisions have been complied with and the action is started within five years after the date of loss.

9.  Our Options is deleted and replaced by the following:

9.  Our Options

If at the time of loss the damaged property is:

a.  Not insured for Replacement Cost Loss Settlement as outlined in Section I - Conditions, Loss Settlement, and we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

b.  Insured for Replacement Cost Loss Settlement as outlined in Section I - Conditions, Loss Settlement, we will pay the amount of loss, whether or not you repair or replace the damaged property.

10.  Loss Payment is deleted and replaced by the following:

10. Loss Payment

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earliest of the following:

a.  20 days after we receive your proof of loss and reach written agreement with you; or

b.  60 days after we receive your proof of loss and:

(1)  There is an entry of a final judgment; or

(2)  There is a filing of an appraisal award or a mediation settlement with us.

c.  If payment is not denied, within 90 days after we receive notice of claim. However, this provision (10.c.) does not apply if factors beyond our control reasonably prevent such payment.

SECTION II – EXCLUSIONS

Under 1. Coverage E – Personal Liability and Coverage F – Medical Payments To Others, Items a. and I. are deleted in all forms and Endorsement HO 24 73 and replaced by the following:

a.  Which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

(1)  Is of a different kind, quality or degree than initially expected or intended; or

(2)  Is sustained by a different person, entity, real or personal property than initially expected or intended.

I.  Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

(This is Exclusion 1.m. in HO 24 73.)

SECTION II – CONDITIONS

1.  Limit of Liability is deleted and replaced by the following:

1.  Limit Of Liability

a. Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

b. **Sub-limit Of Liability**

Subject to Paragraph a. above, our total liability under Coverage E for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sub-limit is within, but does not increase the Coverage E limit of liability.

c. The limit of liability in a. above and sub-limit in b. above apply regardless of the number of "insureds", claims made or persons injured.

d. Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

This Condition does not apply with respect to damages arising out of "fungi", wet or dry rot, or bacteria when endorsement HO 03 34 is attached.

**SECTIONS I AND II – CONDITIONS**

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment Or Fraud**

a. Under Section I – Property Coverages, with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section I – Property Coverages if, whether before or after a loss, one or more "insureds" have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

b. Under Section II – Liability Coverages, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

5. **Cancellation** is replaced by the following:

5. **Cancellation**

A. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

B. If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency;

we may cancel this policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel during this period by letting you know at least 10 days before the date cancellation takes effect;

(2) If:

(a) There has been a material misstatement or fraud related to the claim;

(b) We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

(c) We have paid the applicable policy limits with respect to the damaged property.

We may cancel during this period by letting you know at least 45 days before the date cancellation takes effect.

C. We shall be entitled to collect any additional premium required to keep the policy in effect during this period.

However, this provision 5. C. does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

D. If the conditions described in Paragraph 5.B. or 5.C. do not apply, we may cancel only for the following reasons:

(1) When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

(2) We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(a) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(b) When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

(i) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

(ii) On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property: or

(iii) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

(a) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

Except as provided in Paragraphs 5.D.(1) and 5.D.(2)(a) of this provision, we will let you know of our action at least 20 days before the date cancellation takes effect.

(c) When this policy has been in effect for more than 90 days, we may cancel:

(i) If there has been a material misstatement;

(ii) If the risk has changed substantially since the policy was issued;

(iii) In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

(iv) If the cancellation is for all insureds under policies of this type for a given class of insureds;

(v) On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate , by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(vi) On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property: or

(vii) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim, if:

(a) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

We will provide the following notice:

(i) If the date of cancellation becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the date cancellation takes effect; or

(ii) If the date of cancellation becomes effective on or after June 1 and before December 1, we will let you know:

(i) At least 100 days before the date cancellation takes effect; or

(ii) By June 1;

whichever is earlier.

E. If the date of cancellation becomes effective during a "hurricane occurrence":

(1) The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

(2) We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the policy remains in effect.

However, this provision (5.E.) does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

F. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

G. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

6. **Nonrenewal** is deleted and replaced by the following:

6. **Nonrenewal**

A. We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal. Proof of mailing will be sufficient proof of notice:

(1) If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency;

then during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this policy only if:

(a) You have not paid the renewal premium;

(b) There has been a material misstatement or fraud related to the claim;

(c) We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

(d) We have paid the applicable policy limits with respect to the damaged property.

We may do so by letting you know at least 45 days before the expiration date of the policy.

(2) If the conditions described in Paragraph 1.a. do not apply, we may elect not to renew this policy by providing the following notice before the expiration date of this policy:

(a) If we elect not to renew this policy due to a revision in coverage for sinkhole loss or "catastrophic ground cover collapse" based on the 2007 changes in the Florida Insurance Laws, we will let you know at least 100 days before the expiration date of this policy;

(b) If Paragraph (a) does not apply and:

HO 01 09 01 08

(i) The date of nonrenewal becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the expiration date of this policy; or

(ii) The date of nonrenewal becomes effective on or after June 1 and before December 1, we will let you know:

(a) At least 100 days before the expiration date of this policy; or

(b) By June 1;

whichever is earlier.

(3) We shall be entitled to collect any additional premium required to keep the policy in effect during this period.

However, this provision 6.A.(3). does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

B. We will not nonrenew this policy:

(1) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(2) On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

(3) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may elect not to renew this policy if:

(a) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

C. If the date of nonrenewal becomes effective during a "hurricane occurrence":

(1) The expiration date of this policy will not become effective until the end of the "hurricane occurrence"; and

(2) We shall be entitled to collect additional premium for the period the policy remains in effect.

8. Subrogation

The following sentence is added to the first paragraph of this condition:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following condition is added:

10. Renewal Notification

If we elect to renew this policy, we will let you know, in writing:

a. Of our decision to renew this policy; and

b. The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.

**From:** Amanda Davis
**Sent:** Sunday, December 28, 2008 3:15 PM
**To:** 'Kathleen_M_Paustian@whirlpool.com'
**Cc:** Denise Marquith
**Subject:** Robert & Theresa Corral, Your File No. ADC-78114, DOL: 07/30/08

Hello Ms. Paustian:

I hope this finds you well as we enter the new year. The undersigned law firm has been retained by United Fire & Casualty Co. to assist it in its subrogation efforts for the above-referenced loss. The underlying claim is close to finalization and the loss amount is currently $356,635.00. Please contact us to discuss the loss and Whirlpool's findings as well as those of our engineer, Raymond Arms of Professional Engineering Services. I will be in the office tomorrow through Wednesday, as well as Friday of this week. Should you be unable to reach me for any reason, feel free to contact my assistant, Denise Marquith, or my supervising partner, Hobart Hind.

Thank you for your consideration.

Kind regards,

Amanda Davis

*Amanda O. Davis*
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
One Harbour Place, Suite 500
777 S. Harbour Island Boulevard
Tampa, Florida 33602
Phone - 813-281-1900
Fax - 813-281-0900
e-mail - adavis@butlerpappas.com


EXHIBIT
B

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR JACKSON COUNTY, FLORIDA
CIVIL DIVISION

UNITED FIRE AND CASUALTY COMPANY,
a/s/o Robert and Theresa Corral,

      Plaintiff,

v.

WHIRPOOL CORPORATION,
a Delaware corporation,

      Defendant.

Case No.: 2010 - 524 CA

CERTIFIED PROCESS SERVER # 052
SECOND JUDICIAL CIRCUIT COURT OF FLORIDA
DATE SERVED 6-29-10 TIME 11:40 AM

**SUMMONS**

THE STATE OF FLORIDA:

TO ALL AND SINGULAR THE SHERIFFS OF SAID STATE:

      YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint,

in the above-styled cause upon the Defendant:

**WHIRLPOOL CORPORATION**
**% Corporation Service Company - Registered Agent**
1201 Hays Street
Tallahassee, FL 32301

      The Defendant is hereby required to serve written defenses to said Complaint, on Plaintiff's

attorney, whose name and address is:

Matthew W. Peaire, Esquire
Amanda O. Singleton, Esquire
BUTLER PAPPAS WEIHMULLER KATZ CRAIG, LLP
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, FL 33602
PH: (813) 281-1900

within 20 days after service of this Summons upon that Defendant, exclusive of the day of service,

and to file the original of said written defenses with the Clerk of said Court either before service on



Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered

against that Defendant for the relief demanded in the Complaint.

WITNESS my hand and the seal of the Court on _____ June 17 _____,

2010.

Dale Rabon Guthrie
Clerk of Circuit Court

By: _____
Deputy Clerk

In accordance with the American With Disabilities Act, persons with disabilities needing a special accommodation to participate in this proceeding should contact the individual or agency sending the notice at One Harbour Place, Suite 500, 777 S. Harbour Island Blvd., Tampa, Florida 33602 (813) 281-1900 not later than seven days prior to the proceeding. If hearing impaired, (TTD) 1-800-955-8771, or Voice (V) 1-800-955-8770, via Florida Relay Service.

## IMPORTANT

    A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

    If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

MATTHEW W. PEAIRE, ESQ.
Florida Bar No.: 0484717
AMANDA O. SINGLETON, ESQ.
Florida Bar No.: 0015957
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, Florida 33602
(813) 281-1900
Attorneys for Plaintiff

## IMPORTANTE

Usted ha side demandado legalmente. Tiene viente (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el number del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresor y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparense en la guia telefonica.

Si desea responder la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberia usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney".

MATTHEW W. PEAIRE, ESQ.
Florida Bar No.: 0484717
AMANDA O. SINGLETON, ESQ.
Florida Bar No.: 0015957
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, Florida 33602
(813) 281-1900
Attorneys for Plaintiff

Ꭺ

### IMPORTANT

Des poursuites judiciaries onte ete enterprises contre vous, Vous avez 20 jours consecutifs a partir de la date de l'assignation de cete citation pour deposer une response ecrite a la plainte ci-joint aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite, avec mention du numero de dossier ci-dessus et due nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de pedre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouves requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une response ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocoie de votre response ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

MATTHEW W. PEAIRE, ESQ.
Florida Bar No.: 0484717
AMANDA O. SINGLETON, ESQ.
Florida Bar No.: 0015957
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, Florida 33602
(813) 281-1900
Attorneys for Plaintiff

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR JACKSON COUNTY, FLORIDA
CIVIL DIVISION

UNITED FIRE AND CASUALTY COMPANY,
a/s/o Robert and Theresa Corral,

Case No.:

    Plaintiff,

v.

WHIRPOOL CORPORATION,
a Delaware corporation,

    Defendant.

_____

## COMPLAINT

Plaintiff, UNITED FIRE AND CASUALTY COMPANY (hereinafter "United Fire") a/s/o

Robert and Theresa Corral (hereinafter the "Corrals"), by and through its undersigned counsel, and

.pursuant to the Florida Rules of Civil Procedure, hereby files this, its Complaint, upon Defendant,

WHIRLPOOL CORPORATION (hereinafter "Whirlpool"), and avers as follows:

### GENERAL AVERMENTS

1.    This is an action for damages in excess of Fifteen Thousand Dollars and No Cents

($15,000.00) exclusive of interest and costs.

2.    At all times material, UNITED FIRE was a foreign for profit corporation doing

business in all counties in Florida including Jackson County, Florida.

3.    WHIRLPOOL was registered as a Delaware Corporation and engaged in business in

the State of Florida.

4.    At all times material to this action, UNITED FIRE insured the Corrals pursuant to

a policy of insurance numbered 80850170, a true and correct copy of which is attached as Exhibit

"A." As a result of the events described in this Complaint, Plaintiff, UNITED FIRE, became

obligated to pay, and did pay insurance proceeds to the Corrals.

5.      As a result of the payment of insurance proceeds to its insureds, Plaintiff,

UNITED FIRE, is now subrogated to the rights of the Corrals to the extent of its payment of

insurance proceeds.

6.      At all times material, the Corrals were the owners of a Whirlpool Dryer, model

number GEW9250PW1, serial number MT1360893.

7.      At all times material, WHIRLPOOL, was the manufacturer of the

subject dryer.

8.      At all times material to this action, WHIRLPOOL was engaged in the business of

manufacturing and selling dryers such as the one that is the subject of this Complaint.

9.      At all times material hereto, the subject dryer was located inside the

Corral residence located at 2870 Hwy 90 Levy Street, Cottondale, Florida, Jackson County,

Florida.

10.     On or around June 30, 2008, a fire occurred at the Corral residence.  The fire

originated in the subject dryer.

11.     The fire loss was a direct and proximate result of a manufacturing defect of the

subject dryer.

12.     As a direct result of the fire, the Corral residence sustained extensive damages.

13.     The damages were directly and solely caused by the subject dryer.

14.     All conditions precedent to the bringing of this action have occurred, have been

met, or have been waived.

## COUNT I - STRICT PRODUCT LIABILITY
### WHIRLPOOL CORPORATION

15.     Plaintiff incorporates and re-alleges paragraphs one (1) through thirteen (13) as though fully set forth herein.

16.     It is foreseeable, and likewise would have been foreseeable at the time of the manufacture and sale of the subject dryer, that said dryer would reach end consumers such as the Corrals and that same would be used by the end consumers.

17.     The subject dryer was defective for reasons including but not limited to the positioning of the power wiring to the heater which allowed the cable to touch the duct without being properly secured to the bottom of the heater, thus igniting a fire.

18.     The defect in the subject dryer existed at the time it was sold to the Corrals.

19.     On or around June 30, 2008 the subject dryer malfunctioned and caught fire, causing extensive damages to the Corral residence.

20.     The Corrals were normal, anticipated and intended users of the subject dryer, and acquired it through the normal and ordinary stream of commerce.

21.     The subject dryer was in the same defective condition at the time of the loss as it had been at the time it was sold to the Corrals.

22.     WHIRLPOOL had a duty not to sell, place into the stream of commerce, install and/or service a defective product that could cause damage to a consumer such as the Corrals.

23.     The defect in the subject dryer, which was present at the time it was sold to the Corrals, made the product unreasonably dangerous in its normal operational use, because it would, and did, cause extensive damage to the Corral residence.

24.     WHIRLPOOL breached its duty to the Corrals by manufacturing and selling the subject dryer in a defective condition. It was foreseeable that the Corrals could suffer damages as a direct result of the unreasonably dangerous condition of the subject dryer.

25.     As a direct and proximate result of the defective condition of the dryer, as described herein, the Corrals sustained extensive damages.

26.     UNITED FIRE was consequently required to compensate the Corrals for their loss by virtue of the insurance policy attached as Exhibit "A."

27.     As a result of said insurance payments, UNITED FIRE is now subrogated to the legal rights of the Corrals.

WHEREFORE, Plaintiff, UNITED FIRE AND CASUALTY COMPANY, by and through its undersigned counsel, respectfully demands judgment against WHIRLPOOL CORPORATION, in excess of Fifteen Thousand Dollars and 00/100ths Cents ($15,000.00), plus pre-judgment interest, post-judgment interest, costs and any other relief this Court deems proper.

Respectfully Submitted,

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

Matthew W. Peaire
Florida Bar No.: 0484717
Amanda O. Singleton
Florida Bar No.: 0015957
One Harbour Place
777 South Harbour Island Blvd., Suite 500
Tampa, FL 33602-5729
813/281-1900; Fax: 813/281-1900
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by Service

of Process to said Defendant or its Agent.

AMANDA O. SINGLETON, ESQUIRE

**UNITED FIRE & CASUALTY COMPANY**
118 SECOND AVE SE
PO BOX 73909
CEDAR RAPIDS IA 52407-3909

0110   **COMPANY COPY**

| ACCOUNT NUMBER: | 235200 |
|---|---|
| POLICY NUMBER: | 80850170 |

**HOMEOWNERS DECLARATIONS**

POLICY WILL BE BILLED TO THE MORTGAGEE

| ISSUE DATE | 04/25/2007 | REPLACEMENT OF | 80850170 | CHANGE | | 04/26/2007 |
|---|---|---|---|---|---|---|

NAMED ROBERT CORRAL
INSURED THERESA CORRAL
AND
MAILING PO BOX 677
ADDRESS COTTONDALE FL 32431-0677

AGENCY & CODE 752642

BUTLER-VAUSE INC
PO BOX 1348
TALLAHASSEE FL 32302-1348

| POLICY PERIOD: | 12:01 A.M. Standard time At The Residence Premises | FROM: 04/26/2007 | TO: 04/26/2008 |
|---|---|---|---|

And for successive policy periods as stated below.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period, subject to our premiums, rules and forms, then in effect. You must pay us prior to the end of the current policy period or else this policy will terminate after any statutorily required notices are mailed to you. An insufficient funds check is not considered payment.

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| | DESCRIBED LOCATION:<br>2870 HWY 90<br>COTTONDALE FL 32431 | | |
| | PRIMARY, 1 FAMILY, 1-STORY,<br>YEAR OF CONSTRUCTION 1998, FRAME,<br>PROTECTION CLASS 7, TERRITORY 052, WITHIN CITY LIMITS<br>BCEG 05 | | |
| | MORTGAGEE: COUNTRYWIDE HOME LOANS<br>          ISAOA ATIMA FTWX-22<br>          PO BOX 961206<br>          FORT WORTH TX 76161-1206<br>          LOAN #: 140771392 | | |
| A | DWELLING | 214,100 | 1,167 |
| B | OTHER STRUCTURES | 21,410 | INCL |
| C | PERSONAL PROPERTY | 107,050 | INCL |
| D | LOSS OF USE | 42,820 | INCL |
| E | PERSONAL LIABILITY - EACH OCCURRENCE | 100,000 | INCL |
| F | MEDICAL PAYMENTS - EACH PERSON | 1,000 | INCL |
| | FORMS | | |
| | H00003    0491 SPECIAL FORM<br>H00109    0606 SPECIAL PROVISIONS - FLORIDA | | |

DEDUCTIBLE - SECTION I $ 1000
Except $4282 for Hurricane

In case of a loss under Section I, we cover only that part of the loss over the deductible stated.

This Declarations Page supersedes and replaces any preceding declarations page bearing the same policy number for this policy period.

X

(COUNTERSIGNED BY AUTHORIZED REPRESENTATIVE)

HO 70 01 10 96



**EXHIBIT**

**A**

| ACCOUNT NUMBER: | 235200 |
|---|---|
| POLICY NUMBER: | 80850170 |

## SUPPLEMENTAL HOMEOWNERS DECLARATIONS

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| HO0334 | 0903 LIMITED FUNGI, WET OR DRY ROT | | |
| HO0351. | 0106 HURRICANE PERCENTAGE DED-FLORIDA | | |
| | HURRICANE DEDUCTIBLE: 2% | | |
| HO0401 | 0693 AMENDATORY ENDORSEMENT | | |
| HO0416 | 0491 PREMISES ALARM OR FIRE PROTECTION | | -59 |
| | CENTRAL STATION FIRE ALARM | | |
| | LOCAL SMOKE ALARM | | |
| HO0490 | 0606 PERSONAL PROPERTY REPLACEMENT COST | | 222 |
| · HO0496 | 0491 HOME DAY CARE BUSINESS-NO LIABILITY | | |
| | COVERAGE/LIMITED PROPERTY COVERAGE | | |
| HO2394 | 0606 SINKHOLE LOSS COVERAGE | | |
| HO7003 | 0491 AUTOMATIC VALUATION ADJUSTMENT | | |
| HO7055 | 0700 GOLF CART LIABILITY COVERAGE | | |
| | FAIA | | 2.00 |
| | HURRICANE REINSURANCE ASSESSMENT | | |
| | FL FHCF CAT ASSMT - 1.0% | | 13.00 |
| | TOTAL PREMIUM | | 1,345.00 |
| | YOUR POLICY INCLUDES THE FOLLOWING CHARGE | | |
| | FOR HURRICANE COVERAGE | | 259.00 |
| | TOTAL PREMIUM | | 1,345.00 |
| | ADJUSTMENT FOR THIS CHANGE: | | |
| | NO CHANGE | | |

HO 70 47 10 96

## Stuffer Attachment Record
For Company Use Only

The following Stuffers are attached:

| | |
|---|---|
| PL1108 | 200705 |
| PL225 | 199505 |
| PL226 | 199505 |
| ST1319 | 199907 |
| ST1329 | 199910 |
| ST1393 | 200107 |
| ST1575 | 200505 |
| ST1578 | 200510 |
| ST1616 | 200703 |
| ST1623 | 200707 |
| ST1627 | 200707 |

| UNITED FIRE & CASUALTY COMPANY | 0110 | COMPANY COPY | |
|---|---|---|---|

UNITED FIRE & CASUALTY COMPANY
118 SECOND AVE SE
PO BOX 73909
CEDAR RAPIDS IA 52407-3909

0110 COMPANY COPY

ACCOUNT NUMBER: 235200
POLICY NUMBER: 80850170

**HOMEOWNERS DECLARATIONS**

POLICY WILL BE BILLED TO THE MORTGAGEE

| ISSUE DATE 03/20/2008 | REPLACEMENT OF 80850170 | RENEWAL |
|---|---|---|
| NAMED ROBERT CORRAL | | AGENCY & CODE 752642 |
| INSURED THERESA CORRAL | | |
| AND | | BUTLER-VAUSE INC |
| MAILING PO BOX 677 | | PO BOX 1348 |
| ADDRESS COTTONDALE FL 32431-0677 | | TALLAHASSEE FL 32302-1348 |

| POLICY PERIOD: | 12:01 A.M. Standard time At The Residence Premises | FROM: 04/26/2008 | TO: 04/26/2009 |
|---|---|---|---|

And for successive policy periods as stated below.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period, subject to our premiums, rules and forms then in effect. You must pay us prior to the end of the current policy period or else this policy will terminate after any statutorily required notices are mailed to you. An insufficient funds check is not considered payment.

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| | DESCRIBED LOCATION:<br>2870 HWY 90<br>COTTONDALE FL 32431<br><br><br>PRIMARY, 1 FAMILY, 1-STORY,<br>YEAR OF CONSTRUCTION 1998, FRAME,<br>PROTECTION CLASS 7, TERRITORY 052, WITHIN CITY LIMITS<br>BCEG 05<br><br>MORTGAGEE: COUNTRYWIDE HOME LOANS<br>        ISAOA ATIMA FTWX-22<br>        PO BOX 961206<br>        FORT WORTH TX 76161-1206<br>        LOAN #: 140771392 | | |
| A | DWELLING | 219,000 | 1,250 |
| B | OTHER STRUCTURES | 21,900 | INCL |
| C | PERSONAL PROPERTY | 109,500 | INCL |
| D | LOSS OF USE | 43,800 | INCL |
| E | PERSONAL LIABILITY - EACH OCCURRENCE | 100,000 | INCL |
| F | MEDICAL PAYMENTS - EACH PERSON | 1,000 | INCL |
| | FORMS<br><br>HO0003    0491 SPECIAL FORM<br>HO0109    0108 FL-SPECIAL PROVISIONS | | |

DEDUCTIBLE - SECTION I $ 1000
Except $4380 for Hurricane

In case of a loss under Section I, we cover only that part of the loss over the deductible stated.

| This Declarations Page supersedes and replaces any preceding declarations page bearing the same policy number for this policy period. | X | |
|---|---|---|
| | | (COUNTERSIGNED BY AUTHORIZED REPRESENTATIVE) |

HO 70 01 10 96

| | |
|---|---|
| ACCOUNT NUMBER: | 235200 |
| POLICY NUMBER: | 80850170 |

## SUPPLEMENTAL HOMEOWNERS DECLARATIONS

| COVERAGE | DESCRIBED LOCATION AND COVERAGES | LIMIT OF INSURANCE | PREMIUM |
|---|---|---|---|
| HOO334 | 0903 LIMITED FUNGI, WET OR DRY ROT | | |
| HOO351. | 0106 HURRICANE PERCENTAGE DED-FLORIDA | | |
| | HURRICANE DEDUCTIBLE: 2% | | |
| HOO401 | 0693 AMENDATORY ENDORSEMENT | | |
| HOO416 | 0491 PREMISES ALARM OR FIRE PROTECTION | | -63 |
| | CENTRAL STATION FIRE ALARM | | |
| | LOCAL SMOKE ALARM | | |
| HOO490 | 0606 PERSONAL PROPERTY REPLACEMENT COST | | 237 |
| HOO496 | 0491 HOME DAY CARE BUSINESS-NO LIABILITY | | |
| | COVERAGE/LIMITED PROPERTY COVERAGE | | |
| HO2394 | 0108 FL-SINKHOLE LOSS COVG | | |
| HO7003 | 0491 AUTOMATIC VALUATION ADJUSTMENT | | |
| HO7055 | 0700 GOLF CART LIABILITY COVERAGE | | |
| | FAIA | | 2.00 |
| | HURRICANE REINSURANCE ASSESSMENT | | |
| | FL FHCF CAT ASSMT - 1.0% | | 14.00 |
| | FL FIGA POE ASSMT - 1.2% | | 17.00 |
| | FL FIGA EMG ASSMT - 1.2% | | 17.00 |
| | 2005 FL HURR ASSMT - 1.9% | | 27.00 |
| | 2005 FL EMRG ASSMT - 1.4% | | 20.00 |
| | FL FIGA POE REG 2006 - 1.4% | | 20.00 |
| | TOTAL PREMIUM | | 1,541.00 |
| | YOUR POLICY INCLUDES THE FOLLOWING CHARGE | | |
| | FOR HURRICANE COVERAGE | | 270.00 |
| | TOTAL PREMIUM | | 1,541.00 |
| | Your renewal premium has changed by the | | |
| | following approximate amounts: | | |
| | Rate Changes | | 97.00 |
| | Coverage changes (includes automatic | | -3.00 |
| | changes such as inflation guard) | | |

HO 70 47 10 96

ST 15 78 10 05

**Notice to Policyholders**
About your Homeowners Policy

*This notice does not provide you any coverage.*
*Please read your policy to determine complete details of the coverages that you are provided.*

**LAW AND ORDINANCE COVERAGE IS AN IMPORTANT COVERAGE THAT YOU MAY WISH TO PURCHASE. YOU MAY ALSO NEED TO CONSIDER THE PURCHASE OF FLOOD INSURANCE FROM THE NATIONAL FLOOD INSURANCE PROGRAM. WITHOUT THIS COVERAGE, YOU MAY HAVE UNCOVERED LOSSES. PLEASE DISCUSS THESE COVERAGES WITH YOUR INSURANCE AGENT.**

ST 15 78 10 05

PL 226 05 95

## ORDINANCE OR LAW - REJECTION OF INCREASED AMOUNT OF COVERAGE

I have read the Disclosure Notice about the above noted coverage and have decided that I DO NOT WANT THE COVERAGE THAT YOU OFFERED TO ME.

I understand that by rejecting this offer, it need not be repeated for three years from the date of my rejection.

I also understand that I can request this coverage at any time this policy, or a renewal policy, is in force and, if I do, coverage will not become effective:

1.  when a storm or hurricane watch or warning is issued for the State of Florida by the National Weather Service;

2.  during a storm or hurricane; and

3.  for 72 hours after the storm or hurricane watch or warning is canceled by the National Weather Service.

Named Insured(s) Sign Below:

Date Signed:

PL 226 05 95                Copyright, Insurance Services Office, Inc., 1994

The periods of time under 1., 2. and 3. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in SECTION 1 - CONDITION 2.d.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises," for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises," Vandalism or malicious mischief or Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

   This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $500 for:

   a. The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

   b. Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

   c. Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

   d. Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

Copyright, Insurance Services Office, Inc., 1990

HO 04 16 04 91

## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system in working order and to let us know promptly of any change made to the system or if it is removed.

HO 04 16 04 91               Copyright, Insurance Services Office, Inc., 1990

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PERSONAL PROPERTY REPLACEMENT COST

### FLORIDA

**SECTION I**

For an additional premium, covered losses to the following property are settled at replacement cost at the time of loss:

a. Coverage C – Personal Property;

b. If covered in this policy, awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:

a. Jewelry;

b. Furs and garments trimmed with fur or consisting principally of fur;

c. Cameras, projection machines, films and related articles of equipment;

d. Musical equipment and related articles of equipment;

e. Silverware, silver-plated ware, goldware, goldplated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry; and

f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost coverage will not apply to other classes of property separately described and specifically insured.

### 1. PROPERTY NOT ELIGIBLE

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

a. Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

b. Memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

c. Articles not maintained in good or workable condition.

d. Articles that are outdated or obsolete and are stored or not being used.

### 2. REPLACEMENT COST

The following loss settlement procedure applies to all property insured under this endorsement:

a. We will pay no more than the least of the following amounts:

(1) Replacement cost at the time of loss without deduction for depreciation;

(2) The full cost of repair at the time of loss;

(3) The limit of liability that applies to Coverage C, if applicable;

(4) Any applicable special limits of liability stated in this policy; or

(5) For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

b. We will settle the loss as noted in Paragraph 2.a. above whether or not actual repair or replacement is complete.

c. You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

All other provisions of this policy apply.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – FLORIDA

### DEFINITIONS

The following definitions are added:

**"Fungi"**

a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

b. Under Section II, this does not include any fungi that are, are on, or are contained in a good or product intended for consumption.

**"Hurricane Occurrence"**

A "Hurricane Occurrence":

a. Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

b. Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

c. Ends 72 hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**"Catastrophic Ground Cover Collapse"**

"Catastrophic ground cover collapse" means geological activity that results in all of the following:

(1) The abrupt collapse of the ground cover;

(2) A depression in the ground cover clearly visible to the naked eye;

(3) Structural damage, other than settling or cracking, of a building or structure insured under this policy, including the foundation; and

(4) The building or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that building or structure.

### SECTION I – PROPERTY COVERAGES
### COVERAGE C – PERSONAL PROPERTY
### SPECIAL LIMITS OF LIABILITY

Items **10.** and **11.** are deleted and replaced by the following:

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

a. Accessories and antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **10**.

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

b. Is away from the "residence premises"; and

c. Is used at any time or in any manner for any "business" purpose.

Electronic apparatus includes:

a. Accessories and antennas; or

b. Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this item **11**.

### PROPERTY NOT COVERED

Item **3.b.** is deleted and replaced by the following:

3. Motor vehicles or all other motorized land conveyances. This includes:

b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

(1) Accessories or antennas; or

(2) Tapes, wires, records, discs or other media;

for use with any electronic apparatus described in this Item 3.b.

The exclusion of property described in 3.a. and 3.b. above applies only while the property is in or upon the vehicle or conveyance.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

a. Used to service an "insured's" residence; or

b. Designed for assisting the handicapped;

## COVERAGE D – LOSS OF USE

Item 1 is deleted and replaced by the following:

1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

## SECTION I – ADDITIONAL COVERAGES

8. Collapse is deleted and replaced by the following:

8. Collapse

a. With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building, or part of the building, cannot be occupied for its intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

(1) Perils Insured Against in Coverage C – Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to you prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to you prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items (2), (3), (4), (5), and (6) unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

c. If Endorsement HO 00 15 is attached to the policy, Section I – Additional Coverages 8. Collapse in that endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

b. (1) Perils Insured Against in Coverages A and B.

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage C – Personal Property.

d. If Endorsement HO 17 31 is attached to the policy, Section I – Additional Coverages 8. Collapse in that Endorsement is deleted in its entirety and Paragraph b.(1) above is deleted and replaced by the following:

HO 01 09 01 08

b. (1) Perils Insured Against in Coverage A.

In addition, the following paragraph is added:

This additional coverage does not apply to Coverage C – Personal Property.

9. **Glass or Safety Glazing Material** is deleted and replaced by the following:

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a covered building, storm door or storm window; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in a.(2) above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this Additional Coverage 9. will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

For Form HO 00 08, we will pay up to $100 for loss under this coverage.

This coverage does not increase the limit of liability that applies to the damaged property.

(This is Additional Coverage 8. in Form HO 00 08.)

The following Additional Coverage is added to all Forms except HO 00 08. With respect to Form HO 00 04, the words 'covered building' used below, refer to property covered under Additional Coverage 10. Building Additions And Alterations.

11. **Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A (or for Form HO 00 04, you may use up to 10% of the limit of liability that applies to Building Additions And Alterations) for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

(This is Additional Coverage 10. in Form HO 00 08.)

The following Additional Coverage is added:

"Fungi", Wet Or Dry Rot, Or Bacteria

a. We will pay up to $10,000 for:

   (1) The total of all loss payable under Section I-Property Coverages caused by "fungi", wet or dry rot, or bacteria;

   (2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

   (3) The cost to tear out and replace any part of the building or covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

   (4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

b. The coverage described in a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

c. $10,000 is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

   (1) Number of locations insured; or

   (2) Number of claims made.

d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

SECTION I – PERILS INSURED AGAINST

The Section I – Earth Movement Exclusion does not apply to this peril.

In Forms HO 00 02, HO 00 04, and HO 00 06

12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph e. in Forms HO 00 02 and HO 00 06 and d. in Form HO 00 04 is added:

   (e) To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 03:

A. Coverage A – Dwelling And Coverage B – Other Structures

Paragraph 2.f. is added:

f. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.e.(3) is deleted and replaced by the following:

d. Smog, rust or other corrosion;

B. Coverage C – Personal Property

12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph d. is added:

   (d) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

HO 01 09 01 08

For Coverage C, the following peril is added.

17. **"Catastrophic Ground Cover Collapse"**

In Form HO 00 03 with HO 00 15:

A. Under Coverages A, B and C:

Paragraph 1. b.(5) is added:

(5) Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 1.(4)(c) is deleted and replaced by the following:

d. Smog, rust of other corrosion;

Under Items (1) through (5) any ensuing loss to property described in Coverages A, B and C not excluded or excepted in this policy is covered.

In Form HO 00 06 with HO 17 31:

For Coverage C:

Paragraph 3. k. is added:

k. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 3.d.(3) is deleted and replaced by the following:

d. Smog, rust or other corrosion;

Under Items 3.a., through 3 d., 3.j. an d 3.k. any ensuing loss to property described in Coverage C not excluded or excepted in this policy is covered.

In Form HO 00 06 with HO 17 32:

For Coverage A:

Paragraph 2.f. is added:

f. Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.e.(3) is deleted and replaced by the following:

(3) Smog, rust or other corrosion;

In Forms HO 00 02, HO 00 04, and HO 00 06 the following peril is added:

17. **"Catastrophic Ground Cover Collapse"**

**SECTION I – EXCLUSIONS**

1. Ordinance or Law is deleted and replaced by the following:

1. Ordinance Or Law, meaning: any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion 1.a. does not apply to the amount of coverage that may be provided for under Additional Coverages, Glass Or Safety Glazing Material or Ordinance Or Law;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. This exclusion applies whether or not the property has been physically damaged.

(This is Exclusion 1.a. in Form HO 00 03).

Paragraph 1.b. is replaced by the following:

b. **Earth Movement**

"Earth movement" means:

(1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

(2) Landslide, mudslide or mudflow;

(3) Subsidence or sinkhole; or

(4) Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion (1.b.) does not apply to loss by:

(i) Theft; or

(ii) "Catastrophic ground cover collapse".

4. **Power Failure** is deleted and replaced by the following:

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that Peril Insured Against.

(This is Exclusion 1.d. in Form HO 00 03.)

8. **Intentional Loss,** is deleted and replaced by the following:

8. Intentional Loss, meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

(This is Exclusion 1.h. in Form HO 00 03.)

The following Exclusion is added.

**"Fungi", Wet Or Dry Rot, Or Bacteria**

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This Exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

**SECTION I – CONDITIONS**

3. **Loss Settlement**

Under Forms HO 00 02 and HO 00 03:

Paragraph b.4. should be deleted and is replaced by the following:

4. We will settle the loss as follows:

We will settle the loss as noted in b.1. and 2. of this provision whether or not actual repair or replacement is complete.

Paragraph b. 5. is deleted.

Under Form HO 00 06, Items 3.b.(1) and b.(2) is deleted and replaced by the following:

3. b. Buildings under Coverage A at the replacement cost of the property, whether or not you repair or replace the property.

6. **Appraisal** is deleted and replaced by the following:

6. **Mediation Or Appraisal**

If you and we fail to agree on the amount of loss, either may:

a. Demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be $500 or more, prior to application of the deductible; or there must be a difference of $500 or more between the loss settlement amount we offer and the loss settlement amount that you request. The settlement in the course of the mediation is binding only if both parties agree, in writing, on a settlement and, you have not rescinded the settlement within three business days after reaching settlement. You may not rescind the settlement after cashing or depositing the settlement check or draft we provided to you.

We will pay the cost of conducting any mediation conference except when you fail to appear at a conference. That conference will then be rescheduled upon your payment of the mediator's fee for that rescheduled conference. However, if we fail to appear at a mediation conference, we will pay your actual cash expenses you incur in attending the conference and also pay the mediator's fee for the rescheduled conference.

b. Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

(1) Pay its own appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If, however, we demanded the mediation and either party rejects the mediation results, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss.

8. **Suit Against Us** is deleted and replaced by the following:

8. **Suit Against Us**

No action can be brought unless the policy provisions have been complied with and the action is started within five years after the date of loss.

9. **Our Options** is deleted and replaced by the following:

9. **Our Options**

If at the time of loss the damaged property is:

a. Not insured for Replacement Cost Loss Settlement as outlined in Section I - Conditions, Loss Settlement, and we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

b. Insured for Replacement Cost Loss Settlement as outlined in Section I - Conditions, Loss Settlement, we will pay the amount of loss, whether or not you repair or replace the damaged property.

10. **Loss Payment** is deleted and replaced by the following:

10. **Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable upon the earliest of the following:

a. 20 days after we receive your proof of loss and reach written agreement with you; or

b. 60 days after we receive your proof of loss and:

(1) There is an entry of a final judgment; or

(2) There is a filing of an appraisal award or a mediation settlement with us.

c. If payment is not denied, within 90 days after we receive notice of claim. However, this provision (10.c.) does not apply if factors beyond our control reasonably prevent such payment.

**SECTION II – EXCLUSIONS**

Under **1. Coverage E – Personal Liability** and **Coverage F – Medical Payments To Others**, items a. and l. are deleted in all forms and Endorsement HO 24 73 and replaced by the following:

a. Which is expected or intended by one or more "insureds" even if the "bodily injury" or "property damage":

(1) Is of a different kind, quality or degree than initially expected or intended; or

(2) Is sustained by a different person, entity, real or personal property than initially expected or intended.

l. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana, and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

(This is Exclusion **1.m.** in HO 24 73.)

**SECTION II – CONDITIONS**

1. **Limit of Liability** is deleted and replaced by the following:

1. **Limit Of Liability**

a. Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

b. **Sub-limit Of Liability**

Subject to Paragraph a. above, our total liability under Coverage E for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sub-limit is within, but does not increase the Coverage E limit of liability.

c. The limit of liability in a. above and sub-limit in b. above apply regardless of the number of "insureds", claims made or persons injured.

d. Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

This Condition does not apply with respect to damages arising out of "fungi", wet or dry rot, or bacteria when endorsement HO 03 34 is attached.

**SECTIONS I AND II – CONDITIONS**

2. **Concealment or Fraud** is deleted and replaced by the following:

2. **Concealment Or Fraud**

a. Under Section I – Property Coverages, with respect to all "insureds" covered under this policy, we provide no coverage for loss under Section I – Property Coverages if, whether before or after a loss, one or more "insureds" have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

b. Under Section II – Liability Coverages, we do not provide coverage to one or more "insureds" who, whether before or after a loss, have:

(1) Intentionally concealed or misrepresented any material fact or circumstance;

(2) Engaged in fraudulent conduct; or

(3) Made false statements;

relating to this insurance.

5. **Cancellation** is replaced by the following:

5. **Cancellation**

A. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

B. If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency;

we may cancel this policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel during this period by letting you know at least 10 days before the date cancellation takes effect;

(2) If:

(a) There has been a material misstatement or fraud related to the claim;

(b) We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

(c) We have paid the applicable policy limits with respect to the damaged property.

We may cancel during this period by letting you know at least 45 days before the date cancellation takes effect.

C. We shall be entitled to collect any additional premium required to keep the policy in effect during this period.

However, this provision 5. C. does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

D. If the conditions described in Paragraph 5.B. or 5.C. do not apply, we may cancel only for the following reasons:

(1) When this policy has been in effect for 90 days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

(2) We may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(a) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(b) When this policy has been in effect for 90 days or less, we may cancel for any reason, except we may not cancel:

(i) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

(ii) On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

(iii) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

(a) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

Except as provided in Paragraphs 5.D.(1) and 5.D.(2)(a) of this provision, we will let you know of our action at least 20 days before the date cancellation takes effect.

(c) When this policy has been in effect for more than 90 days, we may cancel:

(i) If there has been a material misstatement;

(ii) If the risk has changed substantially since the policy was issued;

(iii) In the event of failure to comply with underwriting requirements established by us within 90 days of the effective date of coverage;

(iv) If the cancellation is for all insureds under policies of this type for a given class of insureds;

(v) On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate , by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(vi) On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

(vii) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim, if:

(a) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

We will provide the following notice:

(i) If the date of cancellation becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the date cancellation takes effect; or

(ii) If the date of cancellation becomes effective on or after June 1 and before December 1, we will let you know:

(I) At least 100 days before the date cancellation takes effect; or

(ii) By June 1;

whichever is earlier.

E. If the date of cancellation becomes effective during a "hurricane occurrence":

(1) The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

(2) We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the policy remains in effect.

However, this provision (S.E.) does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence".

F. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

G. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within 15 days after the date cancellation takes effect.

6. **Nonrenewal** is deleted and replaced by the following:

6. **Nonrenewal**

A. We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal. Proof of mailing will be sufficient proof of notice:

(1) If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency;

then during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the "residence premises", we may elect not to renew this policy only if:

(a) You have not paid the renewal premium;

(b) There has been a material misstatement or fraud related to the claim;

(c) We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

(d) We have paid the applicable policy limits with respect to the damaged property.

We may do so by letting you know at least 45 days before the expiration date of the policy.

(2) If the conditions described in Paragraph 1.a. do not apply, we may elect not to renew this policy by providing the following notice before the expiration date of this policy:

(a) If we elect not to renew this policy due to a revision in coverage for sinkhole loss or "catastrophic ground cover collapse" based on the 2007 changes in the Florida Insurance Laws, we will let you know at least 100 days before the expiration date of this policy;

(b) If Paragraph (a) does not apply and:

(i) The date of nonrenewal becomes effective on or after December 1 and before June 1, we will let you know at least 100 days before the expiration date of this policy; or

(ii) The date of nonrenewal becomes effective on or after June 1 and before December 1, we will let you know:

(a) At least 100 days before the expiration date of this policy; or

(b) By June 1;

whichever is earlier.

(3) We shall be entitled to collect any additional premium required to keep the policy in effect during this period.

However, this provision 6.A.(3). does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

B. We will not nonrenew this policy:

(1) On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(2) On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

(3) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may elect not to renew this policy if:

(a) The total of such property claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

C. If the date of nonrenewal becomes effective during a "hurricane occurrence":

(1) The expiration date of this policy will not become effective until the end of the "hurricane occurrence"; and

(2) We shall be entitled to collect additional premium for the period the policy remains in effect.

8. **Subrogation**

The following sentence is added to the first paragraph of this condition:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the "residence premises" is located.

The following condition is added:

10. **Renewal Notification**

If we elect to renew this policy, we will let you know, in writing:

a. Of our decision to renew this policy; and

b. The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

All other provisions of this policy apply.