## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**UNITED FIRE AND CASUALTY COMPANY,**
**a/s/o Robert and Theresa Corral,**

    **Plaintiff,**

v.                           **CASE NO.  5:10-cv-199/RS-EMT**

**WHIRLPOOL CORPORATION,**
**a Delaware corporation,**

    **Defendant.**
_____/

## ORDER

Before me is Defendants' motion for summary judgment (Doc. 21).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is
"whether the evidence presents a sufficient disagreement to require submission to a
jury or whether it is so one-sided that one party must prevail as a matter of law."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986).
The moving party has the burden of showing the absence of a genuine issue as to
any material fact, and in deciding whether the movant has met this burden, the
court must view the movant's evidence and all factual inferences arising from it in
the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*, 398

U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

Thus, if reasonable minds could differ on the inferences arising from undisputed

facts, then a court should deny summary judgment. *Miranda v. B & B Cash*

*Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank*

*& Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However,

a mere 'scintilla' of evidence supporting the nonmoving party's position will not

suffice; there must be enough of a showing that the jury could reasonably find for

that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing

*Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff.  *See Galvez v.*

*Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d

1340, 1343 n.1 (11th Cir. 2002)).  " 'All reasonable doubts about the facts should

be resolved in favor of the non-movant.' " *Id.* (quoting *Burton v. City of Belle*

*Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684

F.2d 1365, 1368-69 (11th Cir. 1982).

On June 30, 2008, around 8:00 pm, one of the children of Robert and

Theresa Corral placed a load of laundry in the dryer.  The Corral family then went

to dinner, leaving the dryer on.  At 9:57 pm, a fire in the Corral's house was

reported to the Jackson County Fire Department.

Plaintiff retained Mr. Raymond Arms as their Cause and Origin and Electrical Engineering expert.  Mr. Arms began his initial investigation the day after the fire.  He inspected the scene of the fire, focusing specifically on the electrical wiring within the house, washer, and dryer.  Believing that the dryer was the source of the fire, Mr. Arms suspended his investigation until he could continue with Defendant's Cause and Origin expert, Mr. Eric Jackson.  On July 22, 2008, they examined the scene and took the dryer for further investigation.  The examination of the dryer took place on September 24, 2008.  Mr. Arms and Jackson systematically dismantled the dryer.  Mr. Arms concluded that a wire sticking to the exhaust tube of the dryer was the source of the fire.  According to Mr. Arms, the wire touching the exhaust tube lead to excessive heat that caused the dryer to ignite.

Plaintiff also retained Dr. Kendall Clarke as a metallurgist.  Dr. Clarke was hired to examine the metal exhaust tube and to estimate the temperatures that it reached.  From his examination, Dr. Clarke determined that the tube must have reached at least 2800 degrees Fahrenheit, and for that to have happened, the dryer must have been on at the time of ignition causing a forced draft.

Defendant's Cause and Origin expert, Mr. Jackson, concluded that there was no evidence that the dryer malfunctioned.  Additionally, Defendant's electrical engineering expert, John Adams, stated that the "dryer was designed, tested, and

manufactured in accordance with Whirlpool Standards and the Underwriters

Laboratory Standard for Electric dryers."  (Doc. 22, p. 4).

Plaintiff brought this product liability suit against Defendant claiming a

manufacturing defect in the dryer in state court, which was later removed.

Defendant now moves for summary judgment.

### III. ANALYSIS

An order has already been entered striking the testimony of Plaintiff's

experts (Doc. 31).  Defendant contends it is entitled to summary judgment because

without the experts' testimony, Plaintiff cannot prove that a manufacturing defect

existed in the dryer.  "Under Florida law, a strict product liability action required

the plaintiff to prove that (1) a product (2) produced by a manufacturer (3) was

defective or created an unreasonably dangerous condition (4) that proximately

caused (5) injury."  *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1258

(11th Cir. 2002).  Plaintiff must "offer proof of both general causation—that the

device in question can cause harm of the type [Plaintiff] alleges—and proof of

specific causation—that the device in fact did cause [Plaintiff's] injury.  To meet

this burden requires the use of expert testimony."  *Kilpatrick v. Breg, Inc.,* 613

F.3d 1329, 1334 n. 4 (11th Cir. 2010)(internal citations omitted).  Without the

testimony of Mr. Arms or Dr. Clarke, Plaintiff has no evidence that there was a

defect in the dryer which started the fire.  Therefore, Plaintiff fails to meet the third

prong required for a successful strict product liability action.

However, Plaintiff alleges the case *Cassisi v. Maytag Co.* precludes

summary judgment from being granted.  396 So.2d 1140 (Fla. Dist. Ct. App. 1st

1981).  The facts in *Cassisi* are undoubtedly similar to the facts presented here.

The plaintiff brought a product liability action against the manufacturer of a dryer

that allegedly malfunctioned and caused a fire.  The lower court granted summary

judgment stating the plaintiff failed to prove that the dryer was defective because

the dryer could not be properly examined due to damage.  *Id.* at 1142.  The

appellate court reversed, creating an inference of a defect when there is a

malfunction during normal operation.  *Id.* at 1151.

Although there are many similarities between these two cases, *Cassisi* does

not apply here.  *Cassisi* states that "the facts essential for the interference's

application are simply proof of the malfunction during normal operation."  *Id.*

Without Dr. Clarke's testimony, Plaintiff offers no evidence that the dryer was

operating when the fire started.  The dryer was turned on at approximately 8:00

pm, and the fire was reported at 9:57 pm.  The longest cycle the dryer could have

been on is sixty-four minutes.  (Doc. 25).  It is entirely possible that the dryer was

not operating when the fire started.  In fact, without the experts' testimony,

Plaintiff offers no evidence that dryer started the fire rather than the dryer just being damaged due to the fire starting elsewhere.

## IV. CONCLUSION

Summary judgment is granted for Defendant against Plaintiff.  The clerk is directed to close the case.


**ORDERED** on September 22, 2011.

> **/s/ Richard Smoak**
> **RICHARD SMOAK**
> **UNITED STATES DISTRICT JUDGE**